# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**In re DRYWALL LITIGATION**

**Relates to Cases Numbered:**

| | |
|---|---|
| **2:21-cv-887** | **2:21-cv-888** |
| **2:21-cv-891** | **2:21-cv-894** |
| **2:21-cv-896** | **2:21-cv-889** |
| **2:21-cv-890** | **2:21-cv-892** |
| **2:21-cv-893** | **2:21-cv-895** |
| **5:21-cv-574** | **6:21-cv-2011** |
| **6:21-cv-2013** | **8:21-cv-2771** |
| **8:21-cv-2779** | **8:21-cv-2773** |
| **8:21-cv-2778** | **8:21-cv-2774** |
| **8:21-cv-2777** | **8:21-cv-2785** |
| **8:21-cv-2775** | **8:21-cv-2788** |
| **8:21-cv-2789** | **8:21-cv-2781** |
| **8:21-cv-2783** | |

---

## REPORT AND RECOMMENDATION ON MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUES COMMON TO ALL CASES

These cases come before the Court on the Motions for Partial Summary Judgment filed by Defendants Knauf Gips KG ("Knauf Gips") and Knauf New Building System (Tianjin) Co. Ltd. (f/k/a Knauf Plasterboard (Tianjin) Co., Ltd.) (collectively, the "Knauf Defendants").[1] Plaintiffs filed the twenty-five Related Cases (cited in the caption) against the Knauf Defendants seeking, among other

---

[1] Identical motions have been filed in each case and assigned the docket numbers as set forth in the attachment hereto.

things, damages related to allegedly defective drywall the Knauf Defendants manufactured and placed into the stream of commerce, which was later installed in Plaintiffs' homes. Plaintiffs allege generally that the primary components in the drywall at issue allegedly reacted or broke down and released sulfur compounds and other gases.

The current Motions for Partial Summary Judgment raise two issues: first, whether any claims for punitive damages are barred by Florida Statute § 768.73(2); and, second, whether any claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute § 501.204, are limited to recovery of the cost of the goods. As explained below, it is respectfully recommended that the motions be granted in part and denied in part.

## I.     BACKGROUND

### A. The Multidistrict Litigation

Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese-manufactured drywall were consolidated for pretrial proceedings in MDL 09-2047 before District Judge Fallon in the Eastern District of Louisiana, who managed the MDL for the ensuing ten years. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 2047, 2021 WL 50455, at *1 (U.S. Jud. Pan. Mult. Lit. Jan. 5, 2021).

As Judge Fallon explained,[2] from 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf Coast and the East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of foul-smelling gas, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. As a result, many homebuilders also filed suit seeking to recoup their damages. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation.

---

[2] The Background related to the MDL is adapted from Judge Fallon's Suggestion of Remand to the transferor courts, which the Panel incorporated into its Conditional Remand Order, cited in the text.

The Knauf Defendants[3] are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Defendants are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Defendants first entered their appearance in the MDL litigation on July 2, 2009.

Thereafter, Judge Fallon presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. Judge Fallon found in favor of the plaintiff family in *Hernandez*, issued detailed Findings of Fact and Conclusions of Law, and entered a judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46—which represented a remediation cost of $81.13 per square foot based on the footprint square footage of the house.

Subsequently, the Knauf Defendants agreed to institute a pilot remediation program utilizing the remediation protocol formulated by Judge Fallon from the evidence in *Hernandez*. The Knauf pilot remediation program was completed, and more than 2,200 homes containing KPT Chinese drywall were remediated using the

---

[3] The Chinese drywall at issue was largely manufactured by two groups of defendants, but the cases before this Court deal exclusively with the Knauf Defendants and their downstream associates consistent with the allegations in the *Bennett* case, cited *infra*.

same general protocol. At Judge Fallon's urging, the parties began working together to monetize the program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Defendants and the Plaintiffs' Steering Committee entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which was designed to resolve all Knauf-related, Chinese drywall claims. In addition to the Knauf Settlement Agreement and after a jury trial in a bellwether case, numerous defendants in the chain-of-commerce with the Knauf Defendants entered into class settlement agreements, the effect of which settled almost all of the Knauf Defendants' chain-of-commerce litigation. The total amount of the Knauf Settlement was approximately $1.1 billion.

Thereafter, additional claims were filed against Knauf and others, as in the case of *Elizabeth Bennett, et al. v. Gebr. KnaufVerwaltungsgesellschaft, KG, et al.*, No. 14-2722, filed in the Northern District of Alabama on November 13, 2014 as a nationwide class on behalf of similarly situated homeowners who allegedly suffered damages due to defective Chinese drywall in their homes. The Plaintiffs raised claims against the Knauf Defendants for negligence, negligence per se, strict liability, breach of express and/or implied warranty, redhibition, violations of the Louisiana Products Liability Act, private nuisance, negligent discharge of a corrosive substance, unjust enrichment, violations of consumer protection laws,

medical monitoring, and equitable and injunctive relief with respect to the manufacture of allegedly defective Chinese drywall.

In January 2015, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Louisiana and consolidated it with the *In re Chinese Manufactured Drywall Liability Litigation*, MDL 09-2047, which was pending before Judge Fallon. Upon learning that twenty-three *Bennett* plaintiffs planned to appeal his Orders and Reasons granting summary judgment against them, Judge Fallon severed these cases so as not to delay the suggestion of remand. MDL 09-2047, R. Doc. 22967.

In December 2020, at the time Judge Fallon suggested remand of the remaining 78 unresolved Drywall MDL cases—25 of which were in the Middle District of Florida—he opined:

> The instant suggestion of remand involves claims asserted by Plaintiffs who did not participate in the Knauf settlement. After managing this MDL for ten years, the Court concludes that the purpose behind consolidating these related actions in this Court have now been served. The Court has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving facts and legal questions common to the various cases in this MDL proceeding. No further pretrial motions raising common questions are pending in these cases, and remand to the transferor court appears to be in the interest of judicial efficiency and fairness to the parties.
> . . .
> Given the extensive motions practice that has occurred in this MDL, the Court finds it appropriate to transfer the remaining *Bennett* cases to the transferor court. *See* Attachment A. This Court recognizes that parties may still need to conduct some discovery before trial. Nevertheless, this discovery is case-specific, so it should be supervised by the transferor court. This Court has worked diligently for the past ten years, and transferor court

and parties are now equipped with abundant resources to steer these cases to a fair and just conclusion. In particular, this Court has denied class certification of the purported *Bennett* class action. R. Docs. 22528. At this point in the litigation, centralizing these cases has minimal benefit to parties; local courts are well-suited to evaluate the losses incurred by the Plaintiffs.

*In re Chinese-Manufactured Drywall*, 2021 WL 50455, at *2.

On January 5, 2021, based upon Judge Fallon's suggestion of remand, the unresolved cases were remanded by the Judicial Panel on Multidistrict Litigation to the original transferor court, the Northern District of Alabama. *See id*. at *3, Att. A. Following a failed mediation of these cases, Judge Burke of the Northern District of Alabama, on September 22, 2021, severed all claims based on the affected property's location outside the Northern District of Alabama and transferred the cases to the appropriate districts, including the twenty-five cases remanded to the Middle District of Florida. *See Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, Case No. 8:21-cv-02501-MSS-CPT (M.D. Fla. Sept. 22, 2021). Judge Burke had ordered Plaintiffs' counsel (the same in all cases) to file amended complaints[4] within twenty-one days for the severed cases he listed, twenty-five of which were being transferred to the Middle District of Florida. *Id*. (Doc. 26 at 1). However, before Plaintiffs had an opportunity to file their amended complaints, the case was

---

[4] The complaints were required to assert only those claims that were consistent with the operative Fifth Amended Complaint from the MDL 2047. Doc. 21334.

transferred from the Northern District of Alabama to the Middle District of Florida. *Id*. (Doc. 35).

### B. *Case Management in the Middle District of Florida Cases*

On October 26, 2021, twenty-five cases with affected properties in the Middle District of Florida that had originated in MDL 09-2047 were transferred into the Middle District and assigned to District Judge Scriven. *Id.* (Docs. 27, 28). On October 29, 2021, Judge Scriven issued Orders in the case directing the severance of the individual claims, the filing of separate individual civil actions, and closure of the transferred-in (pre-severance) case. *Id.* (Docs. 35, 36).

On March 4, 2022, Judge Scriven ordered that the twenty-five Middle District of Florida cases would be uniformly re-assigned to the undersigned and "referred for the coordination and resolution of all pretrial matters by Order or Report and Recommendation, as appropriate." *See* Case No. 8:21-cv-2781-MSS-DAB (Doc. 12). [5] On April 12, 2022, the undersigned entered a Case Management and Scheduling General Order that applies to each of the 25 cases referenced in the caption of this motion (the "Related Cases"). *See id.* (Doc. 41). In that Order, the Court permitted the Knauf Defendants to "file two separate motions for summary

---

[5] On March 8 and 9, 2022, the Court entered General Orders 1, 2 and 3 regarding the format of "general" motions that apply to all cases; jurisdictional issues; and provision of the most pertinent documents from the MDL to have "the judges of this Court be[come] familiar with the course of the MDL proceedings as they affect the handling of these cases without reviewing the thousands of docket entries from the MDL."

judgment in each case, one motion addressing the issues common to all cases, and one motion addressing the issues specific to the particular case in which it is filed." *Id*. at 3. The instant analysis relates exclusively to the Knauf Defendants' Motions addressing the two issues common to all cases regarding all of Plaintiffs' damages claims: 1) the preclusion of Plaintiffs' punitive damages claims under § 768.73 and 2) the limitation in damages available under FDUTPA; the applicable Motions (by document number) are identified in the Attachment to this Report and Recommendation.

## II.   APPLICABLE LAW

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party

on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla*., 515 F. App'x 832, 834 (11th Cir. 2013) (citation omitted). For issues where the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys*., 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citation omitted). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). It may not undertake credibility determinations or weigh the evidence when reviewing the record. *See Latimer v. Roaring Toyz, Inc*., 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"When the only question a court must decide is a question of law, summary judgment may be granted." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). The interpretation of a statute is a question of law for the court to

decide. *Thayer v. Randy Marion Chevrolet Buick Cadillac, LLC*, 519 F. Supp. 3d 1062, 1067 (M.D. Fla. 2021) (*Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 n.8 (11th Cir. 1989)), *aff'd*, 30 F.4th 1290 (11th Cir. 2022).

## III.   ANALYSIS

*A. Punitive Damages Claims*

As part of Plaintiffs' claims, they seek an award of punitive damages against the Knauf Defendants. Complaint at 16. The Knauf Defendants argue that under Florida Statutes § 768.73(2)(a), Plaintiffs in the twenty-five cases currently pending in the Middle District of Florida are precluded from recovering punitive damages because they were awarded against the Knauf Defendants for alleged harm resulting from the same act or course of conduct in a previous case. The statute provides:

> (2)(a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. For purposes of a civil action, the term "the same act or single course of conduct" includes acts resulting in the same manufacturing defects, acts resulting in the same defects in design, or failure to warn of the same hazards, with respect to similar units of a product.

> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior, the court may permit a jury to consider an award of subsequent punitive damages. In permitting a jury to consider awarding subsequent punitive damages, the court shall make specific findings of fact in the

> record to support its conclusion. In addition, the court may consider
> whether the defendant's act or course of conduct has ceased. Any
> subsequent punitive damage awards must be reduced by the amount of any
> earlier punitive damage awards rendered in state or federal court.

Fla. Stat. § 768.73(2). The Amendments precluding certain subsequent punitive damages awards were added to the statute in 1999 for the purpose of "presumptively bar[ring] successive awards of punitive damages against a defendant based on 'the same act or single course of conduct.'" *Sheffield v. R.J. Reynolds Tobacco Co.*, 329 So. 3d 114, 116 (Fla. 2021) (quoting § 768.73) (finding 1999 amendments to § 768.73 applied to punitive damages claim in a wrongful death action where the smoking-injured decedent died after effective date of amendments).

On November 9, 2010, Plaintiffs Jeffrey Robin and Elisa Robin filed a lawsuit in the Eleventh Judicial Circuit in Miami Dade County, Florida against certain Knauf Defendants (KPT and Knauf GIPS) and others in the case of *Robin v. Knauf Plasterboard (Tianjin) Co. Ltd.*, Case No. 10-59323-CA-01. In *Robin*, the plaintiffs sought damages from the Knauf Defendants based on their alleged role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue.[6] The *Robin* plaintiffs also alleged that the Knauf Defendants manufactured and sold defective and unreasonably

---

[6] Plaintiffs do not challenge the authenticity of the Exhibits from the *Robin* lawsuit that the Knauf Defendants attached to their Motion for Partial Summary Judgment. Exhibits 1-6, Am. Complaint; Verdict; Final Judgments; Satisfaction of Final Judgments.

dangerous drywall with the expectation that it would not be inspected or altered prior to installation in its ultimate destination in homeowners' homes; continuously and systematically distributed and sold drywall to numerous purchasers in Florida to be used in construction in there and throughout the United States; engaged in conduct showing (a) such an entire lack of care that the Knauf Defendants must have been consciously indifferent to the consequences, (b) wanton or reckless disregard for the welfare of the public, and (c) a reckless indifference to the rights of others.[7] The jury returned a verdict in favor of the plaintiffs in November 2013, awarding the Robins punitive damages in the amount of $1,000,000 against KPT and $5,000,000 against Knauf Gips for a total of $6 million; final judgment was entered on August 26, 2014; satisfaction of judgment was filed on August 23, 2016.[8]

The Knauf Defendants argue that Plaintiffs in the Middle District cases are barred from recovering punitive damages because punitive damages have already been awarded against the Knauf Defendants for the same alleged acts and defective product/design alleged in the *Robin* lawsuit. The Knauf Defendants argue that since § 768.73(2)(a) prohibits successive punitive damages from being awarded and the jury in *Robin* already awarded the plaintiffs $6 million in punitive damages against

---

[7] Motion for Partial Summary Judgment, Exh. 1 ¶¶ 3, 27, 215.
[8] Motion for Partial Summary Judgment, Exh. 2 (verdict); Exh. 3 (judgment). On June 12, 2015, a second judgment was entered awarding attorneys' fees and costs against KPT and Knauf Gips; this judgment was also satisfied. *Id*., Exhs. 4, 6.

the same Knauf Defendants for claims arising out of the manufacture and design of Chinese-manufactured drywall, Plaintiffs are precluded from seeking punitive damages here. The Knauf Defendants contend that they "satisfied the prior punitive damages judgments awarded against them in the *Robin* Lawsuit" on August 23, 2016.

Plaintiffs argue that Defendants' Motion seeking partial summary judgment on punitive damages should be denied. Plaintiffs do not challenge the authenticity of the documents from *Robin* or that the documents contain allegations of the same manufacturing defects and conduct as Plaintiffs allege in these Middle District cases. Response at 7-8 ("Plaintiffs do not challenge the authenticity of these exhibits . . ."). Plaintiffs do not dispute the jury's verdict and resulting judgment included punitive damages in the *Robin* case, *id.*, but contend that Defendants cannot rely on § 768.73(2)(a) based on the lack of information provided regarding the final amount of punitive damages that the Knauf Defendants actually paid following the settlement in *Robin*. Plaintiffs acknowledge that the exhibits from the *Robin* lawsuit show punitive damages were "awarded" and later paid in 2014 following the jury verdict. However, Plaintiffs argue, Defendants have not provided the Court with the necessary and relevant information to make a fully informed decision regarding the application of Florida law allowing additional punitive damages to be awarded because the amount of punitive damages Defendants actually "paid" is unknown.

- 14 -

Plaintiffs point to the decision in another Chinese-manufactured drywall case, *Knauf Plasterboard (Tianjin) Co. v. Ziegler*, which acknowledged that the parties in *Robin* subsequently entered into a post-judgment settlement and recorded a satisfaction of judgment but declined to allow discovery regarding the settlement. 219 So. 3d 882 (Fla. 4th DCA 2017). Rather, Plaintiffs argue that the exhibits do not provide this court with the necessary and relevant information[9] to make a fully informed decision regarding the application of Florida law allowing additional punitive damages to be awarded in these cases; they argue that the amount of punitive damages the Knauf Defendants actually "paid" is unknown. Response at 8-9.

Because Plaintiffs' claims in this case are asserted on the basis of diversity jurisdiction, the Court must apply the substantive law of the forum state. "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). When faced with a question of Florida law, the Court is bound to follow the decisions of the Florida Supreme Court. *Glass v. Captain Katanna's Inc.*, 950 F.Supp.2d 1235 (M.D. Fla. 2013)

---

[9] Plaintiffs contend that they intend to seek in discovery the amount of punitive damages actually paid in *Robin* lawsuit, however, all discovery is closed. *See* Case Management and Scheduling General Order at 3-4; *see also Ziegler,* 219 So. 3d at 885-86 (denying discovery of amounts paid in settlement).

(citing *C.I.R. v. Bosch's Estate*, 387 U.S. 456 (1967); *CSX Transp. Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 791 (11th Cir. 1999)). Absent a clear decision from the Florida Supreme Court, the Court must follow decisions of Florida's "intermediate appellate courts unless there is some persuasive indication that the [Florida Supreme Court] would decide the issue differently." *Nunez v. Geico Gen. Ins. Co*., 685 F.3d 1205, 1210 (11th Cir. 2012) (internal quotations omitted).

"Florida law clearly requires that the legislative intent be determined primarily from the language of the statute because a statute is to be taken, construed and applied in the form enacted." *Birnholz v. 44 Wall St. Fund, Inc*., 880 F.2d 335, 340–41 (11th Cir. 1989) (citing *Thayer v. State*, 335 So.2d 815, 817 (Fla. 1976)), *certified question answered*, 559 So. 2d 1128 (Fla. 1990). "The Legislature must be assumed to know the meaning of words and to have expressed its intent by the use of the words found in the statute." *Thayer*, 335 So.2d at 817. "[T]he cardinal rule of statutory construction is that when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Birnholz*, 880 F.2d at 341 (citing *Streeter v. Sullivan*, 509 So.2d 268, 271 (Fla. 1987) (cleaned up).

There is no Florida Supreme Court decision interpreting or analyzing the term "award" versus "paid" in the punitive damages statute at issue, Florida Statute

§ 768.73. However, in the case the parties discuss, *Knauf Plasterboard (Tianjin) Co. v. Ziegler*, the Fourth District Court of Appeal held that the plaintiff was not entitled to discovery regarding the amount the Knauf Defendants had previously "paid" to satisfy the punitive damages award in the *Robin* case. 219 So. 3d 882 (Fla. 4th DCA 2017). The plaintiff in *Ziegler* argued that the full award in the *Robin* action was never actually paid because of a settlement, and, since the defendants had not paid the award, they had not been punished. *Id.* at 884. The trial court granted the plaintiff leave to conduct discovery to determine if the drywall defendants had paid the punitive damages award in the *Robin* action. Defendants fought the discovery, arguing that the only relevant consideration was the amount of the punitive damage "award," not the amount paid, in the *Robin* action. *Id.* As the appellate court summarized the trial judge's salient reasoning:

> [T]he statute would have no import if the drywall defendants actually paid nothing and were not punished. The [trial] court commented that it had seen this before in product liability and medical malpractice cases where there are confidential settlement agreements that are intended to hide wrongdoing from the public, contrary to the transparency that the judicial system should afford. In the [trial] court's view, the statute's protection implied the defendant paid a fair share of the punitive damages. The court noted that if defendants paid the punitive damages, the issue was moot. But, if the defendant did not pay, then the statute was not producing the protection intended.

> The [trial] court ordered the drywall defendants to provide the documents under seal for an *in camera* inspection. The defendants advised they would ask for a stay for appellate review; the court advised it would not prolong the case. The [trial] court entered a written order consistent with its oral ruling.

> The [trial]court subsequently entered an In Camera Inspection Order. After reviewing the sealed record, the court overruled the defense objections and ordered the drywall defendants to produce the [] discovery [regarding] . . . settlement release and indemnification agreement between the Robins and the Knauf defendants; [and] . . . the wire transfer notification[s]. . . .

*Id.* at 885.

The drywall defendants sought certiorari review from the Fourth District Court of Appeal of the trial court's orders requiring production of discovery and the in camera inspection. The Fourth District quashed the orders, explaining that the statute was "clear on its face":

> The drywall defendants argue the trial court departed from the essential requirements of law by misreading the relevant statute, which is clear on its face, and by ordering production of irrelevant confidential terms of the settlement in an unrelated case. They suggest the trial court's interpretation of the statute would discourage settlements and subject defendants to endless punitive damage awards. They maintain the amount paid in the *Robin* action settlement is irrelevant because the statute speaks only in terms of an award. They argue they are in a catch–22 situation because they will either have to provide the discovery or forgo their statutory protection against successive punitive damage awards.
>
> We agree with the drywall defendants' argument that section 768.73(2) speaks only in terms of a prior punitive damage "award." In fact, some derivation of the word "award" appears eight times within this subsection. But, not once does any derivation of the word "paid" appear. The statute is clear on its face. We will not infer any other meaning than the plain words chosen by the legislature. *Holly v. Auld*, 450 So.2d 217, 219 (Fla.1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 137 So. 157, 159 (1931)). Accordingly, we quash the trial court's two discovery orders.

*Id*. at 885-86.

Other states—recognizing that "awards" are not the same as payments—have required more than simply certification that an "award" was made; they require evidence of the amount "collected" or "paid." *See, e.g.,* Ohio Rev. Code Ann. § 2315.21(D)(5) (West 2021) ("In any tort action, . . . punitive or exemplary damages shall not be awarded against a defendant if that defendant files with the court . . . evidence showing that punitive or exemplary damages have already been awarded and *have been collected*, in any state or federal court . . .); Mo. Ann. Stat. § 510.263 (West 2020) ("Within the time for filing a motion for new trial, a defendant may file a post-trial motion requesting the amount awarded by the jury as punitive damages be credited by the court with *amounts previously paid* in any state or federal court by the defendant for punitive damages arising out of the same conduct on which the imposition of punitive damages is based.). Such an approach makes far more sense in that the purpose of § 768.73(2) would be undermined if a verdict and judgment in a case that ultimately settles for less were controlling.

The *Ziegler* court's interpretation of and exclusive reliance on the word "award," ignoring the realities of modern litigation settlements, is problematic. As an initial matter, the *Robin* punitive damages "award" effectively did not become final due to the parties' settlement, therefore, this Court has no idea of the actual amount of punitive damages, if any, that were paid. It would appear based on the trial court's commentary and decision as described in *Ziegler* allowing discovery of

the *Robin* settlement amount following his *in camera* review—that the settlement amount paid was noticeably lower than the $6 million amount the jury "awarded." If the *Ziegler* decision is taken literally and the only consideration is the amount "awarded" by the jury—rather than the amount the defendant actually "paid" or the plaintiff "collected"—then a defendant could in theory collusively consent to have a judgment entered as a bar to a future award without actually paying *any* amount to satisfy the award. Such a result would appear to be out of step with the spirit of Florida's law, similar laws in other states, and modern tort law in general. *See* Restatement (Second) of Torts § 908(e) (1977) (amount of punitive damages takes into consideration the existence of multiple claims by numerous persons affected by the wrongdoer's conduct, including both the punitive damages that have been awarded in prior suits and those that may be granted in the future); *Tort Reform 1999: A Building Without Foundation*, 27 F.S.U. L. Rev. 397, 412–13 (2000) ("The 1999 Act arguably drives punitive damages to the brink of extinction in Florida. The new law effectively outlaws punitive damages for anything but consciously intentional misconduct and only if that misconduct has not been previously punished and cannot be pawned off as the ultra vires act of an employee."); Special Report: Inside [Johnson & Johnson's] Secret Plan To Cap Litigation Payouts To Cancer Victims, *Reuters* (Feb. 2, 2022) ("The covert team would go on to evaluate a strategy

to shift all the liability from about 38,000 pending talc cases onto a newly created subsidiary which would immediately declare bankruptcy.")[10]

Additionally, the meaning of "award" in this context is far from clear or obvious. The *Ziegler* opinion's sterile construction of the word "award" disregards applicable litigation provisions. A jury's verdict is not in law an award. The trial court may, for any number of reasons, not translate the verdict into a judgment; and, of course, judgments themselves are subject to reversal or modification on appeal. A verdict which never becomes part of a final, enforceable judgment can hardly be considered an "award." Similarly, a trial court judgment, the validity of which was questioned on appeal, cannot be deemed an "award" when the appellate process is pretermitted by a settlement.

Given the potentially unjust results of elevating a jury verdict and the paucity of reasoning in support of such an interpretation, the *Ziegler* decision should not be taken as a reflection of Florida law. Rather, it is recommended that § 768.73(2)(a) be construed to require, at a minimum, that there have been a prior final enforceable judgment for punitive damages in order for the statutory shield to become effective. On that basis**, it is respectfully recommended that the Motion for Partial Summary Judgment be DENIED** in this regard.

---

[10] https://www.reuters.com/business/healthcare-pharmaceuticals/inside-jjs-secret-plan-cap-litigation-payouts-cancer-victims-2022-02-04/.

Whether or not this conclusion is followed, the Court must consider application of subsection (2)(b). Assuming for purposes of the Knauf Defendants' Partial Summary Judgment Motion that the punitive damages "award" of $6 million in the *Robin* case is the only amount the Court must consider without regard to how much was actually paid, Defendants nonetheless are not entitled to summary judgment on Plaintiffs' punitive damages claim under § 768.73(2)(b), which allows a potential successive award if Plaintiffs show by "clear and convincing evidence that the prior award was insufficient to punish the defendant."

In support of summary judgment on subsection (b), the Knauf Defendants point to their conduct, after settlement was reached in December 2011 between the Plaintiffs Steering Committee (before the *Bennett* case was filed) who entered into the settlement with the Knauf Defendants under a proposed class-wide settlement agreement.[11] Defendants explain that the Knauf Settlement covered all plaintiffs in the MDL who had filed cases in federal or state court on or before December 9, 2011, and whose homes or businesses contained KPT drywall. The Knauf Settlement established two funds, one for remediation and one for economic losses, such as pre-remediation alternative living expenses, lost use, sales, rentals, and foreclosures.

Following preliminary approval, conditional certification, and notice to the

---

[11] Motion for Partial Summary Judgment, Exh. 7 (MDL 2047, Doc. 16407-3).

class, Judge Fallon gave final approval to the Knauf Settlement in February 2013.[12]

The Knauf Defendants subsequently hired an experienced construction firm with regional offices throughout the southeast to remediate the class members' homes such that, by May 2015, remediation of 2,598 homes was complete and Knauf Defendants had paid more than $500 million into the Settlement Funds; an additional 304 claims were settled to reimburse other homeowners who remediated on their own. The Knauf Defendants also settled with various homebuilders by paying $98.2 million, collectively, which covered approximately 1,363 additional homes. Motion for Partial Summary Judgment ¶¶ 20-24 (citing supporting affidavit).

The Knauf Defendants argue that there is no reason to further punish them because they "have stepped up to the plate and paid hundreds of millions of dollars to make homeowners whole"[13] and "have also paid out[14] $6 million in punitive damages in the prior [*Robin*] suit arising from the same alleged acts or series of conduct." Motion for Partial Summary Judgment at 17-18. The Knauf Defendants cite to Judge Fallon's summary during a status conference in MDL 2047 on May 20, 2015:

---

[12] Motion for Partial Summary Judgment, Exh. 9.

[13] The Knauf Defendants argue that they did not act like the other primary manufacturer of Chinese drywall that was the subject of litigation in MDL 2047, Taishan Gypsum Co., which was defaulted. Transcript from Status Conference in MDL 2047 on May 20, 2015, at 44-5, Motion for Partial Summary Judgment, Exh. 13.

[14] The Court is unaware of any evidence that punitive damages were actually paid.

> The Knauf [Settlement] [sic], that is valued at approximately a billion or a little bit over a billion dollars. So they have come in and agreed to remediate all of the homes, 100 percent remediation, and also to pay in addition to that the attorneys' fees[15] that the claimant is owed. Because the Knauf Remediation focused on the damages to the property, if the claimant had other legitimate damages like loss of rent, things of that sort, then they could participate in these programs to seek that remediation in addition. The concept is to make the person whole and that's been accomplished. It's amazing how that has worked. Oftentimes in litigation the litigant doesn't get what they feel they are entitled to and, in addition, they have to pay a percentage of that to the attorneys. Here that hasn't been the case. So it looks like it has worked out for the benefit of the claimants.

(Motion for Partial Summary Judgment, Exh. 14 at 11-12 (May 20, 2015)).

Plaintiffs argue that, even if the Court credits the Knauf Defendants as having paid the full $6 million that the jury awarded in the *Robin* lawsuit—prior to any discounted settlement amount—the size of such punishment would be "insufficient" for the torts Defendants allegedly committed against other homeowners in Florida. Plaintiffs contend, even at the full $6 million, Defendants would have paid less than 1% of total damages as punitive damages because, they argue, although it appears that the Knauf Defendants paid a grand total of $663 million in damages[16] no other punitive damages were paid in the 4,265 cases settled by the Knauf Defendants. Plaintiffs argue that, "by any measure, this punitive award is insufficient to 'punish that defendants' behavior" as § 768.73(2)(b) allows.

---

[15] The Knauf Defendants paid $160,000,000 in legal fees to the PSC.
[16] Miller Affidavit, Exhibit G at Page 4.

Plaintiffs further contend that Defendants' argument about "stepping up to the plate" by agreeing to settle and provide remediation benefits in 2013 does not demonstrate that Defendants' behavior has changed. They argue that Defendants should be subject to additional punitive damages because they "have completely failed to comply with their duty to warn homeowners under Florida law, which extends beyond the sale date." Response at 10 (citing cases). Plaintiffs argue that they failed to receive "any warning whatsoever from these Defendants who knew of the defective nature of their drywall products as early as 2006," and, because Plaintiffs lacked any expertise in identifying defective drywall, they had no way of knowing their homes contained the allegedly defective Knauf drywall or appreciating the off-gassing by the drywall.

This post-sale failure-to-warn issue raised by Plaintiffs previously arose during the MDL proceedings and was squarely addressed by the presiding District Judge Fallon. *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, Civil Action MDL 2047, No. 14-2722, 2020 WL 2488240, at *10 (E.D. La. 2020):

> Plaintiffs collectively contend that Defendants should be estopped from arguing that Plaintiffs were on notice of the defect any earlier than a formal Chinese drywall inspection because Defendants failed to comply with their post-sale duty to warn. Indeed, Florida law recognizes that in some circumstances, manufacturers have a post-sale duty to warn downstream consumers of defects in their products, even after the goods have left the manufacturer's possession or control. [citations omitted} . . .
>
> This duty is premised on the Restatement (Third) of Torts, which provides that a post-sale duty to warn is triggered when "[a] reasonable person in the

seller's position would provide a warning after the time of sale if . . . the seller knows or reasonably should have known that the product poses a substantial risk of harm to persons." Restatement (Third) of Torts, § 10(b)(1).

Even assuming, arguendo, that a post-sale duty to warn does exist, the Restatement (Third) of Torts clarifies that a post-sale duty to warn applies only when "a warning can be effectively communicated to and acted on by those to whom a warning might be provided." Restatement (Third) of Torts § 10(b)(3). In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed.

Judge Fallon's reasoning and his analysis of Florida law as it applies in these cases is sound and persuasive.

Considering the positions set forth by the parties showing the merits and demerits of Defendants' conduct contributing to the losses and activities to ameliorate the damages, it is obvious that the facts and their interpretation and implications are very much in dispute. Viewed as a whole, the record could support findings of both reprehensible and laudable aspects of Defendants' activities. Sifting the evidence and reaching appropriate findings is not for resolution on summary judgment.

To the extent that the Knauf Defendants seek partial summary judgment on Plaintiffs' entitlement to any punitive damages, it is **respectfully recommended** that the Motion be **DENIED**. Under § 768.73(2)(b), even if the verdict in *Robin* is given the effect of a statutory "award," Plaintiffs are entitled to the opportunity to prove

that the previous $6 million award in *Robin* was an inadequate deterrent given the vast number of homes affected by the defective Chinese-manufactured drywall and the amount of damages awarded/paid in the cases against the Knauf Defendants.

This Court previously directed the parties to file documents from the MDL that are specifically relevant to the claims in the twenty-five cases transferred to the Middle District of Florida. The parties have also referred directly to certain evidence or holdings in the MDL proceedings. The Court takes general notice of the MDL proceedings to find that there are factual issues—including the Knauf Defendants' conduct in resolving the claims against them—that could allow subsection (b) to come into play. Given the scope of acknowledged actual damages settlements totaling more than $1 billion in Judge Fallon's estimation, the award in *Robin* amounts to a rounding error (six-tenths of 1%) and could readily be found insufficient as a deterrent. *Cf. Ocasio v C.R. Bard, Inc.*, No: 8:13-cv-1962-CEH-AEP, 2020 WL 3288026, (June 18, 2020) (finding that "[a]lthough the Court previously found in its Summary Judgment Order that Plaintiffs presented sufficient facts to create a factual issue as to whether punitive damages should be awarded, this d[id] not provide insight as to whether the two million dollars in punitive damages already awarded in [a previous case] [wa]s sufficient or insufficient" in light of the defendant's evidence they had stopped selling the injurious product; thus, clear and convincing evidence did not show the previous punitive damages award was insufficient). Because the

presiding District Judges must decide under § 768.73(2) by the time of trial, with specific findings of fact in the record, whether "clear and convincing evidence [shows] that the amount of prior punitive damages awarded was insufficient to punish [Defendants'] behavior," it is **respectfully recommended** that the Court[17] set a date for final briefing and, if appropriate, hearing on the issue.

B. *FDUTPA Limitations*

Plaintiffs also seek in their Complaints certain economic and other consequential and incidental damages through their claim under the Florida Deceptive and Unfair Trade Practices Act. The Knauf Defendants seek partial summary judgment on these FDUTPA damages, arguing that Plaintiffs are barred from seeking damages that are not recoverable under the statute because it is well-established that a plaintiff may only recover "actual damages" under FDUTPA. They argue that, despite this statutory limitation on damages, Plaintiffs impermissibly seek relief for myriad other personal, real property, and other consequential and incidental damages, which go far beyond the "actual damages" related to the drywall. Plaintiffs have listed damages for "costs of inspection; costs and expenses necessary to fully remediate or abate their home; cost of alternative living arrangements; cost to replace other personal property that has been damaged; lost value or devaluation of their

---

[17] Notably, these 25 cases are assigned to 11 different District Judges in four Divisions of the Court. Prudence and judicial economy suggest that only one such hearing be held.

homes; stigma damages; and, loss of use and enjoyment of their home and property."
Complaint ¶ 21.

The purpose of the FDUTPA is "to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985). Under the FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. § 501.204(1). To state a claim under the FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair trade practice, (2) causation, and (3) actual damages." *In re Allyn*, Case No: 5:18-cv-355-OC-30PRL, at *11-12 (M.D. Fla. Jan. 3, 2019) (quoting *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 626-27 (11th Cir. 2015). "A deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment." *Deere Constr., LLC v. Cemex Constr. Materials Fla*., LLC, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016).

As the Eleventh Circuit has noted, "to prove the causation element of a FDUTPA claim, a plaintiff need not prove reliance on the allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Lombardo v. Johnson & Johnson Consumer Companies, Inc*., 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (cleaned up) (citing *Fitzpatrick v.*

*General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011)); *see also State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Intern., Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("when addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").

The pertinent portion of the FDUTPA statute provides: "In an action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages. . ." Fla. Stat. § 501.211(2); see also § 501.212(3) (stating that the FDUTPA does not apply to damage to property other than the property that is the subject of the consumer transaction at issue); *see Rollins, Inc. v. Heller*, 454 So. 2d 580, 584–85 (Fla. 3d DCA 1984) (holding that the plaintiffs could not recover the value of the items stolen from their home due to a defective system from the alarm company when the alarm failed); *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) ("[W]hen the product is rendered valueless as a result of the defect— then the purchase price is the appropriate measure of actual damages."). "Actual damages, for purposes of a claim under [FDUTPA] are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it

should have been delivered according to the contract of the parties." Rachel M. Kane & Kimberly C. Simmons, 10A Fla. Jur. 2d Consumer § 164.

The Knauf Defendants argue that the only recoverable damages that may potentially be available under Plaintiffs' FDUTPA claims is the difference between the market value of the product or service they expected to receive from the Knauf Defendants and the market value of the product or service they actually received from the Knauf Defendants. They argue that Plaintiffs may only recover these "actual damages"—the reduction in value of the drywall as a result of the alleged defect—and not the consequential and incidental damages Plaintiffs have requested. *Cf. Karpel v. Knauf Gips KG*, No. 21-24168, 2022 WL 4366946 (S.D. Fla. Sept. 20, 2022) (finding that although the subsequent purchaser doctrine would not bar a FDUTPA claim, economic loss rule was seemingly implicated and ordering parties to brief the issue) as supplemented in 2022 WL 7296514 (S.D. Fla. Oct. 13, 2022) (granting summary judgment on FDUTPA claims and analyzing the Florida economic loss rule).

Plaintiffs devote less than a page to responding to Defendants' argument on this issue, essentially conceding they are barred from asserting any damages other than actual damages, as set forth above. Response at 11-12. Instead, they argue that "case law is not clear" that "punitive damages may not be awarded for FDUTPA claims alone." However, Plaintiffs fail to cite any authority on this point. *Id.* at 11.

The only issue Plaintiffs do raise with regard to FDUTPA recovery is to argue that it is undisputed that a consumer may recover attorneys' fees and costs if they prevail on the merits of this type of claim. *Id.* at 12 (citing *United Feature Syndicate v. Sunrise Mold Co.*, 569 F. Supp. 1475, 1481 (S.D. Fla. 1983)). However, neither party has briefed the issue since the Knauf Defendants did not move for summary judgment on the availability of attorney's fees to Plaintiffs under FDUTPA. Accordingly, the Court leaves consideration of that issue for another day.

In accordance with the foregoing, **it is respectfully RECOMMENDED:**

1.  The Knauf Defendants' Motion for Partial Summary Judgment in the cases (listed in the Attachment below) be **GRANTED in part and DENIED in part** as follows:

    a.  To the extent Defendants seek summary judgment on Plaintiffs' punitive damages claim based on application of the Florida statute, deny the Motion without prejudice as insufficiently showing a preclusive award and further establish a schedule for final briefing and hearing on whether "clear and convincing evidence [shows] that the amount of prior punitive damages awarded was insufficient to punish [Defendants'] behavior";

    b. To the extent Defendants seek summary judgment limiting Plaintiffs'

damages recovery on its FDUTPA claim to the reduction to the value of

the drywall as a result of the alleged defect, grant the Motion.

**Respectfully recommended** in Orlando, Florida, on October 19, 2022.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

| Case Number (showing original Magistrate Judge Assignment) | Plaintiff(s) | Motion Doc. # |
|---|---|---|
| 2:21-cv-00887-JLB-NPM | Blevins | 47 |
| 2:21-cv-00888-JLB-NPM | CDO Investments | 41 |
| 2:21-cv-00889-JES-NPM | Judge | 38 |
| 2:21-cv-00890-SPC-NPM | Laremore | 42 |
| 2:21-cv-00891-JLB-NPM | MCF Enterprises, Inc. | 38 |
| 2:21-cv-00892-SPC-NPM | Rigopoulos et al. | 42 |
| 2:21-cv-00893-SPC-NPM | Russo et al. | 42 |
| 2:21-cv-00894-JLB-NPM | Timmons | 41 |
| 2:21-cv-00895-SPC-NPM | Van Drie | 40 |
| 2:21-cv-00896-JLB-NPM | Vest | 38 |
| 5:21-cv-00574-WWB-PRL | Allstate Servicing, Inc. | 44 |
| 6:21-cv-02011-RBD-GJK | Porciuncula | 63 |
| 6:21-cv-02013-RBD-GJK | Robbins | 65 |
| 8:21-cv-02771-SCB-AAS | Armstrong | 45 |
| 8:21-cv-02773-TPB-CPT | Ball | 50 |
| 8:21-cv-02774-VMC-TGW | Butcher | 52 |
| 8:21-cv-02775-CEH-JSS | Cohen | 47 |
| 8:21-cv-02777-VMC-TGW | Helmick | 51 |
| 8:21-cv-02778-TPB-CPT | Jaramillo | 49 |
| 8:21-cv-02779-SCB-AAS | Kopach et al. | 46 |
| 8:21-cv-02781-MSS-AAS | Lorquet | 40 |
| 8:21-cv-02783-SDM-JSS | Niemiec | 44 |
| 8:21-cv-02785-VMC-CPT | Pool | 52 |
| 8:21-cv-02788-CEH-AAS | Price | 43 |
| 8:21-cv-02789-CEH-SPF | Stockton | 43 |